UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **NADIYEH BERIJI** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-CV-01334-DII |
| | § | |
| **NICUSOR CHIRCA AND USA** | § | |
| **FULGER TRANSPORT, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Nadiyeh Beriji ("Plaintiff"), by and through undersigned counsel, comes before this Court to assert the following factual allegations and causes of action against Defendant Nicusor Chirca and USA Fulger Transport, Inc. ("Defendants").

### I.   PARTIES

1. Plaintiff is a natural person and domicile of Williamson County, Texas.

2. Defendant Nicusor Chirca ("Defendant Chirca") is a natural person and domicile of Michigan. Defendant Chirca has been served and has made an appearance.

3. Defendant USA Fulger Transport, Inc. ("Defendant Fulger") is a corporation formed under the laws of the State of Michigan with its principal office in the State of Michigan. Defendant Fulger may be served by serving its registered agent for service of process, Radu Bogdanel, at 5395 Cogswell Road, Wayne Michigan 48184. Defendant Fulger may also be served by serving its registered agent for service of process, Ramon Sandoval, at 7577 Old Campbellton Road, San Antonio, Texas 78264.

## II. JURISDICTION AND VENUE

4. Subject Matter Jurisdiction in the Court is proper on the basis of diversity of citizenship. Plaintiff is domiciled in the State of Texas. Defendant Chirca is domiciled in the State of Michigan. Defendant Fulgers is a corporation with its principal place of business and is formed under the laws of the State of Michigan. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

5. Venue is proper in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. 1391(b).

## III. FACTS

6. On or about January 10, 2022, Plaintiff was traveling southbound on Immanuel Road in Austin, Texas.

7. Plaintiff was traveling in a reasonable and prudent manner and was exercising ordinary care for her safety all times relevant herein.

8. At the same time, Defendant Chirca was also traveling southbound on Immanuel Road in an 18-wheeler, which was owned by and operated at the direction of Defendant Fulger.

9. Defendant Chirca was driving in the course and scope of his employment with Defendant Fulger.

10. Both vehicles were approaching the intersection with East Howard Lane.

11. Plaintiff reached the intersection and prepared to make a right-hand turn onto Howard Lane.

12. Unfortunately, Defendant Chirca was paying improper attention and was next to Plaintiff.

13. Defendant Chirca attempted to make a right-hand turn while next to Plaintiff and turned into Plaintiff's vehicle, resulting in the collision.

14. As a direct and proximate result of the collision, Plaintiff suffered personal injuries and resulting damages in an amount to be determined at trial.

## IV. CAUSES OF ACTION

### A. **Negligence of Defendant Chirca**

15. Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth herein at length.

16. At all times relevant herein, Defendant Chirca was operating a commercial motor vehicle transporting property in interstate commerce.

17. In order to undertake such actions, Defendant Chirca is required to have, at a minimum, the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

18. The safe operation of commercial motor vehicles requires specialized knowledge, skill, and additional training not necessary for the safe operation of passenger vehicles because:

    a. commercial motor vehicles are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;

    b. commercial motor vehicles are heavier and longer than passenger vehicles and take longer to execute turning and lane change maneuvers, as compared to passenger vehicles operating at the same pre-turn or lane change speed;

    c. commercial motor vehicles are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory; and

    d.    commercial motor vehicles pose more of a risk of causing personal injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same-pre-collision speed and trajectory.

19. In order to undertake the safe operation of a commercial motor vehicle, drivers such as Defendant Chirca must have knowledge and skills in many areas, including the following:

    a.    the procedures for safe vehicle operations;

    b.    the proper procedures for performing basic maneuvers such as stopping and parking;

    c.    the principles and procedures for proper communications and the hazards of refusing to signal properly, including signaling intent and communicating presence;

    d.    the importance of understanding the effects of speed, including speed and visibility and speed and traffic flow; and

    e.    the proper procedures for using hazard warning signal flashers and warning devices.

20. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the well-known danger of refusing to yield the right-of-way.

21. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that it is reasonably foreseeable that refusing to yield the right-of-way could cause a collision and harms and losses.

22. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the foreseeable dangers of refusing to yield the right-of-way.

23. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that the well-known dangers of refusing to yield the right-of-way.

24. Defendant Chirca's careless, negligent and unlawful acts directly and proximately caused the harms and losses Plaintiff incurred in one or more of the following particulars:

   a. refusing to yield the right-of-way;

   b. turning when unsafe;

   c. maintaining an unsafe distance from other vehicles;

   d. keeping an improper lookout;

   e. travelling at an unreasonable speed given the circumstances;

   f. making an untimely and improper application of his/her brakes;

   g. exhibiting inadequate driver attention;

   h. driving distracted;

   i. taking improper evasive actions to avoid the collision;

   j. choosing to violate safety rules;

   k. driving in a reckless manner;

   l. refusing to observe the condition of traffic;

   f. operating a commercial motor vehicle when he was not qualified to do so;

   g. refusing to follow the proper procedures for safe commercial vehicle operations; and

    h.     refusing acquire and/or utilize the requisite knowledge and skill regarding the basic information.

25. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff suffered personal injuries and resulting damages in an amount to be determined at trial.

### B.     Negligence *Per Se* of Defendant Chirca

26. Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth herein at length.

27. Defendant Chirca's conduct as outlined above constitutes negligence *per se*.

    a. TEX. TRANS. CODE § 545.151, which requires drivers to yield the right-of-way at an intersection.

28. Defendant Chirca violated the above-referenced statutes in the moments leading up to and at the time of the collision described herein.

29. Plaintiff, as a driver on the roadway, is a member of the class of persons the above-referenced statute was designed to protect.

30. Defendant Chirca has no excuse for the violation of the above-referenced statute.

31. Defendant Chirca's violation of the above-referenced statute proximately caused Plaintiff's injuries.

32. Accordingly, Defendant Chirca is negligent *per se*.

### C.     *Respondeat Superior*

33. Plaintiff repleads the foregoing factual allegations as if herein quoted verbatim and set forth herein at length.

34. Without waiving the foregoing, in conjunction with, additionally and/or alternatively, Plaintiff would further show this Court that Defendant Chirca was in the course and scope

of his employment with Defendant Fulger at the time of this collision.

35. Under the doctrine of *Respondeat Superior*, Defendant Fulger is responsible for Plaintiff's damages caused by Defendant Chirca's negligence as alleged above.

### D. Negligence of Defendant Fulger

36. Plaintiff repleads the foregoing factual allegations as if herein quoted verbatim and set forth herein at length.

37. At all times relevant herein, Defendant Fulger operated as a commercial motor carrier.

38. In return for the privilege to operate commercial motor vehicles on the public roadways, prospective motor carriers must make certain safety related certifications and verifications.

39. Motor carriers such as Defendant Fulger are required to submit a Form MCS-150 to the Federal Motor Carrier Administration and obtain an United States Department of Transportation ("US DOT") number.

40. Each Form MCS-150 Defendant Fulger submitted or will submit contains a Certification Statement whereby Defendant Fulger declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations.

41. Motor carriers such as Defendant Fulger are required to submit a Form OP-l to the Federal Motor Carrier Administration in order to gain interstate operating authority.

42. The Form OP-l Defendant Fulger submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that Defendant Fulger is subject to the pertinent portions of the US DOT's Federal Motor Carrier Safety Regulations ("FMCSR") at 49 CFR, Chapter 3, Subchapter B (Parts 350-399).

43. The Form OP-l Defendant Fulger submitted contains a "Safety Certification", certifying to

the Federal Motor Carrier Safety Administration that it has access to, and is familiar with, all applicable US DOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

44. Each Form OP-l Defendant Fulger submitted contains a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, it:

   a. has in place a system and an individual responsible for ensuring overall compliance with the FMCSR;

   b. Can produce a copy of the FMCSR;

   c. has in place a driver safety training/orientation program;

   d. is familiar with US DOT regulations governing driver qualifications and have in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and

   e. has in place policies and procedures consistent with DOT regulations governing driving and operational safety of motor vehicles.

45. Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations.

46. Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

47. Reasonably safe motor carriers utilize information and training materials from industry associations and third party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

48. The safe operation of commercial motor vehicles includes practices and procedures related to turning safely.

49. Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

50. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

51. Defendant Fulger's careless, negligent, and unlawful acts directly and proximately caused Plaintiffs harms and losses in one or more of the following particulars by refusing to use reasonable care by:

    a. refusing to design, develop, and implement adequate safety management controls related to turning safely;

    b. refusing to train Defendant Chirca in the well-known dangers of turning when unsafe;

    c. refusing to properly monitor and supervise the driving habits of its drivers, employees, and/or agents, specifically Defendant Chirca;

    d. refusing to properly instruct its drivers, employees, and/or agents, specifically Defendant Chirca;

    e. entrusting a tractor-trailer to its drivers, employees, and/or agents, specifically Defendant Chirca;

     f.     refusing to comply with federal and/or state regulations and industry standards, as referenced in this Petition and as developed during the discovery in this case;

     g.     improperly auditing the logs and supporting documentation of its drivers, employees, and/or agents, specifically Defendant Chirca;

     h.     refusing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Chirca for compliance with company polices and/or state and federal regulations;

     i.     allowing Defendant Chirca to operate a commercial motor vehicle despite having knowledge of his inability to do so safely;

     j.     refusing to implement adequate safety management controls to ensure compliance with the required safety fitness standard;

     k.     refusing to utilize available technology to monitor and audit the safety performance of its driver's including Defendant Chirca; and

     l.     negligently hiring, training, and supervising Defendant Chirca.

52. Defendant Fulger's careless, negligent, and unlawful acts were the direct and proximate cause of the collision and Plaintiff's resulting harms and losses.

### V.    DAMAGES

53. As a direct and proximate result of the collision making the basis of this lawsuit, Plaintiff suffered and will in all reasonable probability continue to suffer the following actual damages, the dollar value of which exceeds the minimal jurisdictional limits of this Court:

     a.     Medical treatment paid or incurred in the past;

     b.     Medical treatment which will be necessary in the future;

  c.  Past and future pain and suffering;

  d.  Past and future mental anguish;

  e.  Physical disfigurement;

  f.  Past and future impairment;

  g.  Lost wages; and

  h.  Loss of past and future earning capacity.

54. Plaintiff also seeks prejudgment and post-judgment interest at the highest legal rate.

## VI. PLAINTIFF'S DEMAND FOR JURY TRIAL

55. Plaintiffs asserts their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VII. PRAYER

56. Plaintiffs request that Defendants be cited in terms of law to appear and answer this Complaint; that upon final trial, Plaintiffs have judgment against Defendants for the amount of actual damages and for other and different amounts as she shall show proper amendment before trial; and for such other relief, at law and in equity, both general and special, to which Plaintiff may show herself entitled to and to which the Court believes them deserving.

Respectfully submitted,

Ramos James Law, PLLC
P.O. Box 164171
Austin, Texas 78716
Phone: 512.537.3369
Fax: 512.253.4512
**Service of Documents: ryan@ramosjames.com**

By: _/s/ Ryan Toomey___
    Ryan Toomey
    State Bar No. 24081178
    **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing instrument was served on all parties of record on this 14th day of November, 2023.

***Via E-Service***
Lynn Castagna
Eddie Prado
Castagna Scott
1120 S. Capital of Texas Highway
Building 2, Suite 270
Austin, Texas 78746
**ATTORNEYS FOR DEFENDANT CHIRCA**

                                                                */s/ Ryan Toomey*
                                                                 Ryan Toomey